IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| JOANN GAMA, § | |
|    *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 7:22-cv-398 |
| § | |
| IDEA PUBLIC SCHOOLS § | |
|    *Defendants*. § | JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Plaintiff, JOANN GAMA, and brings this action against Defendant, IDEA PUBLIC SCHOOLS, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), pursuant to 42 U.S.C. §2000e, *et seq*., and would show this Court as follows:

### PARTIES

1. Plaintiff, JOANN GAMA (hereafter "Gama"), is an individual citizen and resident of Hidalgo County, Texas.

2. Defendant, IDEA PUBLIC SCHOOLS (hereafter "IDEA" or the "School"), is Texas Non-Profit Corporation. IDEA may be served by serving its registered agent at 2115 West Pike Blvd., Weslaco, Texas 78596.

### JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. §2000e-5(f)(3), this Court has jurisdiction over this matter. Pursuant to 28 U.S.C. 1391(b)(2) and 42 U.S.C. §2000e-5(f)(3), this matter is brought in the proper venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      Gama timely filed a charge of discrimination against IDEA with the Equal Employment Opportunity Commission ("EEOC").  Gama files this complaint within ninety (90) days after receiving a notice of the right to sue from the EEOC.

## STATEMENT OF FACTS

5.      Gama is a Hispanic woman.

6.      Gama was employed by IDEA since its founding, initially as an assistant director, then a middle school principal, Chief of New Schools, Chief Operating Officer, Chief of Schools, and from 2010 to 2020, served as its Superintendent/President.

7.      On or about April 1, 2020, Gama notified the Board of Directors of IDEA ("the Board") that funders and philanthropists were questioning how the School was using its financial resources.  Gama also notified the Board that certain funders were encouraging the School's longtime Chief Executive Officer, Tom Torkelson, a white male, to resign over media reports regarding the School's use of charter flights, suites for sporting events, and the use of philanthropic funds.  Gama told the Board's chairman that she and other members of School's administration team were giving Mr. Torkelson a vote of no-confidence due to his use of the School's resources.

8.      No employee of IDEA, other than its CEO and school-teachers, are given an employment contract.  However, in 2012, Mr. Torkelson executed an employment contract with Wyatt Truscheit, a white male, who would serve as IDEA's Chief Financial Officer.  By the terms of this multi-year employment contract, Mr. Truscheit , was paid more than well over one hundred thousand dollars and was allowed to reside in California while making bi-weekly visits to the Rio Grande Valley.  Mr. Truscheit was also compensated by being provided with an apartment, maid service, and groceries.  In 2016, Mr. Torkelson and Mr. Truscheit renewed this

employment contract and by 2018, he was paid several hundred thousand dollars a year. Mr. Torkelson and Mr. Truscheit used their positions as CEO and CFO to cause the School to make purchases for charter flights, Tesla vehicles, an apartment in San Antonio, and box suites at major sporting events. With School funds, IDEA, via Mr. Torkelson and Mr. Trucheit, purchased the Inn at Chacalaca Bend, a boutique hotel in Cameron County, Texas, and on information and belief, the wife of a Board member was the buyer's agent. After questions arose regarding the legitimacy of this purchase, IDEA marketed the property for sale.

9. That same month, and despite the fact that the Board knew of Mr. Torkelson's improper use of School resources, on information and belief, Mr. Torkelson was encouraged by members of the Board to resign. During the negotiation of Mr. Torkelson's exit from the School, a member of the Board was communicating the Board's deliberations to Mr. Torkelson to Mr. Torkelson's advantage. In the end, Mr. Torkelson was permitted to resign and was given a severance package amounting to over a million dollars. Upon Mr. Torkelson's resignation, Gama was named as his interim replacement.

10. On or about July 16, 2020, Gama, as interim-CEO, provided evidence to the Board's finance committee to support the termination of Mr. Truscheit's employment for cause, but was pushed by the Board to allow him to resign.

11. On or about August 6, 2020, Gama and the School executed a "Superintendent/CEO contract." Section 5.3 of the Superintendent/CEO contract limits the ability of the Board and the School's to terminate Gama's employment. Section 5.4 sets forth procedures the Board and the School must satisfy to terminate Ms. Gama's employment and specifically provides:

> "In the event the Board determines that this Contract should be terminated for good cause before its term expires, the Board shall provide written notice of its finding of good cause, after which the Superintendent/CEO shall be afforded

> reasonable notice and an opportunity to appear before the Board to present evidence and argument in rebuttal."

Despite having the same amount of time with the School, Gama's compensation was several hundred thousand dollars less than what Mr. Torkelson was paid for the same work and did not include the same executive benefits component the Mr. Torkelson's contract provided.

12. Gama then requested that the Board retain an independent auditor to review the use of School resources. The Board granted Gama's request for an independent audit and retained an auditor. Once the audit commenced, Gama thoroughly complied with all of the auditor's requests.

13. As CEO, Gama:

   a. Overhauled all policies and procedures and trained staff how to implement them;
   b. Revamped the Board's finance committee to ensure it was an actual working committee; and
   c. Set up audit and governance committees lead and managed by the Board.

14. On or about May 17, 2021, Gama received notice from the School's attorney, Joseph E. (Joe) Hoffer, of an upcoming Board "retreat," scheduled to be held on May 24, 2021. Gama was explicitly notified that her attendance would not be welcomed.

15. On May 24, 2021, the Board had the first day of their "retreat." It was normal and customary for Gama to be called into a meeting of the Board after its members came out of executive session. When the Board exited executive session, Gama was not called in to attend the regular meeting nor was she even informed that the Board voted to terminate her employment.

16. On May 25, 2021, the Board convened the entire senior leadership team consisting of school chiefs, regular and area superintendents, executive directors and some select vice presidents. In response, Gama reported to work and began greeting the members of the gathered

senior leadership team. While doing so, the Board's chairman, Al Lopez, instructed Gama to report to her office. Once there, Ms. Gama was issued a "Notice of Termination" from "Al Lopez, Board Chair and Acting Superintendent of the School, IDEA Public Schools."

17. The Notice of Termination baldly alleges that Gama failed to "adhere to the standards of conduct and professionalism expected of [her] in [her] position as an officer of IDEA, and for violations of policies and applicable standards and procedures." However, the Notice of Termination failed to give Gama any reasonable notice, whatsoever, of what she is alleged to have done or failed to do.

18. Al Lopez then had Gama escorted out of the building. The Board's decision to gather the School's senior leadership team, allow Ms. Gama to make her presence known to them, terminate her employment with no prior notice, and then see her escorted off the School's premises caused Gama to be professionally and personally discredited in front of her peers.

19. Later that same day, May 25, 2021, the Board released a public statement, claiming that it had received "anonymous emails detailing allegations of inappropriate spending and misuse of IDEA resources." The School's press release mentions "anonymous emails" but purposely failed to mention that they were received well over a year prior to Gama's termination. The School's Chief of Staff, Jessica Hess, told Gama that some members of the Board had an evidenced-based belief that the anonymous emails came from Mr. Torkelson.

20. Moreover, Gama's "spending and use of School resources," both before and during Gama's tenure as CEO, were examined by the School's internal review processes and subsequently approved by the Board's then-treasurer and the Board's finance committee chair, Al Lopez. At no time prior to, or during, her tenure as CEO did Gama receive any notice from the Board or its finance, audit, or governance committees that her expenditure of School

resources were in question or problematic in any way. Moreover, over the years, the School had to respond to several Texas Education Agency investigations and public information requests related to IDEA's expenses. During those processes, not once was Gama notified that any of her expenses were an issue nor was she ever notified that corrective action was needed.

21. On May 28, 2021, Ms. Gama tendered the School's Chief Human Assets Officer, Martin Winchester a written request, via email, to be heard by the Board, as guaranteed by Section 5.4 of her Superintendent/CEO contract.

22. On June 3, 2021, Mr. Winchester sent a reply email informing her that for her to be heard, she had to file a "Termination Grievance by June 8, 2021, and attached a blank version of this form.

23. On June 8, 2021, Gama filed her Termination Grievance.

24. On June 16, 2021, Mr. Winchester held a "conference" on Gama's Termination Grievance. The School and or/the Board appeared through its counsel, Emily Boney. As stated above, the Notice of Termination only made conclusory allegations of misconduct and failed to provide Gama any reasonable notice of what she was alleged to have done or failed to do. In the conference on her Termination Grievance,. Gama presented a written, thorough, basis for reversing the Board's decision to terminate her employment. However, neither the School and/or the Board presented neither any evidence nor any argument in support of the Board's decision.

25. On June 21, 2021, despite a complete lack of any evidence, or even argument, to support the Board's decision, Mr. Winchester decided to "uphold the decision to terminate Ms. Gama's employment." Other than making completely conclusory allegations, Mr. Winchester's written decision failed to give Gama any reasonable notice of what she is factually alleged to have done

or failed to do. Mr. Winchester's decision and finding were made without any evidence, whatsoever, presented during the hearing on her Termination Grievance.

26. On June 29, 2021, Gama filed a grievance/appeal of Mr. Winchester's decision. Therein, Gama disputed each and every conclusory allegation of misconduct described in Mr. Winchester's decision and asserted that the entire "conference" was nothing but a sham because nothing was presented by the Board or School to support its decision nor was she notified what is was alleged to have done or failed to do.

27. On July 24, 2021, the Board heard Gama's grievance/appeal in executive session. During this meeting, Ms. Gama demanded to know what she specifically was alleged to have done or failed to do. Again, the Board refused to give Gama any reasonable notice of what she is alleged to have done or failed to do. The Board was represented by counsel, Joseph E. Hoffer, but made no argument nor did it present any evidence to support Gama's termination. After the Board exited executive session, it upheld Ms. Gama's termination.

28. Gama asserts that she was paid significantly less than Mr. Torkelson, for the same work, because as a Hispanic female, she was expendable and could be used as a scapegoat for the Board's failure to oversee the use of School resources by its white male CEO and white male CFO. Gama denies that IDEA had cause to terminate her employment but also asserts that because of her race and sex, she was not given the option to resign nor offered a severance, as her predecessor, Mr. Torkelson, was given. IDEA's malintent to discriminate is also demonstrated by its decision to parade her in front of her peers immediately upon termination and then issue a press-release attributing to Gama what the Board knew to be the conduct of Mr. Torkelson and Mr. Truscheit. While the School allowed Mr. Torkelson to resign quietly with a severance to avoid media notoriety, the School took steps to publicly fire and humiliate Gama for

things she did not do. Any assertion by IDEA that it had cause to terminate her employment is merely a pretext for discrimination because such an allegation is completely without out merit and because at no time during any stage of her employment grievance process was Gama ever notified what she was alleged to have done or failed to do.

## CAUSES OF ACTION

COUNT 1:     DISCRIMINATION UNDER TITLE VII

29.    Gama re-alleges and here incorporates the allegations contained in the section titled "Statement of Facts," above.

30.    Gama was an employee within the meaning of Title VII and belongs to protected classes based on race and sex.

31.    IDEA is an employer within the meaning of Title VII.

32.    Gama's employment was terminated.

33.    Gama was qualified for the position of CEO.

34.    Gama was within the protected classes of race and sex at the time of her termination.

35.    Gama was terminated because of her race and sex.

## COMPENSATORY DAMAGES

36.    As a direct and proximate result of IDEA's conduct, Gama suffered the following injuries and damages:

   a. Compensatory damages;

   b. The wages, salary, profits, and earning capacity that plaintiffs lost and the present value of the wages, salary, profits, and earning capacity that Gama is reasonably certain to lose in the future because of IDEA's actions;

   c. The mental/emotional pain and suffering that Gama has experienced and is reasonably certain to experience in the future; and

   d. Nominal damages.

## PUNITIVE DAMAGES

37. The acts of IDEA, as described herein, were motivated by an evil motive and intent, and involved a reckless and callous indifference to her federally protected rights. Therefore, Gama seeks punitive damages.

## ATTORNEY FEES

38. Pursuant to 42 U.S.C. §2000e-5(k), Gama is entitled to an award to attorney's fees and costs

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, JOANN GAMA, prays that Defendant, IDEA PUBLIC SCHOOLS be cited to appear, and after trial on the merits judgment be rendered against Defendant IDEA PUBLIC SCHOOLS and JOANN GAMA:

- compensatory damages;
- punitive damages;
- all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation; and
- any and all other general relief or specific relief to which he proves himself entitled.

Respectfully submitted,

By: /s/ David Willis_____
David Willis
State Bar No. 24039455
Federal ID. 36365
Email: dwillis@davidwillispc.com
1534 E. 6th Street, Suite 201
Brownsville, Texas 78520
Ph:     956-986-2525
Fax:    956-986-2528

OF COUNSEL
David Willis, P.C.

ATTORNEY IN CHARGE FOR
Plaintiff, JOANN GAMA.