IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| JOANN GAMA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 7:22-cv-398 |
| | § | |
| IDEA PUBLIC SCHOOLS | § | |
| *Defendants.* | § | JURY DEMANDED |

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT

---

COMES NOW, Plaintiff, JOANN GAMA, and brings this action against Defendant, IDEA PUBLIC SCHOOLS, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), pursuant to 42 U.S.C. §2000e, *et seq*., and would show this Court as follows:

### PARTIES

1.      Plaintiff, JOANN GAMA (hereafter "Gama"), is an individual citizen and resident of Hidalgo County, Texas.

2.      Defendant, IDEA PUBLIC SCHOOLS (hereafter "IDEA" or the "School"), is Texas Non-Profit Corporation.  IDEA may be served by serving its registered agent at 2115 West Pike Blvd., Weslaco, Texas 78596.

### JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. §2000e-5(f)(3), 42 U.S.C. §1983 and the Fourteenth Amendment to the Constitution of the United States, this Court has jurisdiction over this matter.   Pursuant to 28 U.S.C. 1391(b)(2), 42 U.S.C. §2000e-5(f)(3), and 42 U.S.C. §1983, this matter is brought in the proper venue.

<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

4.      Gama timely filed a charge of discrimination against IDEA with the Equal Employment

Opportunity Commission ("EEOC").  Gama files this complaint within ninety (90) days after

receiving a notice of the right to sue from the EEOC.

<u>STATEMENT OF FACTS</u>

5.      Gama is a Hispanic woman.

6.      Gama was employed by IDEA since its founding, initially as an assistant director, then a

middle school principal, Chief of New Schools, Chief Operating Officer, Chief of Schools, and

from 2010 to 2020, served as its Superintendent/President.

7.      On or about April 1, 2020, Gama notified the Board of Directors of IDEA ("the Board")

that funders and philanthropists were questioning how the School was using its financial

resources.  Gama also notified the Board that certain funders were encouraging the School's

longtime Chief Executive Officer, Tom Torkelson, a white male, to resign over media reports

regarding the School's use of charter flights, suites for sporting events, and the use of

philanthropic funds.  Gama told the Board's chairman that she and other members of School's

administration team were giving Mr. Torkelson a vote of no-confidence due to his use of the

School's resources.

8.      No employee of IDEA, other than its CEO and school-teachers, are given an employment

contract.  However, in 2012, Mr. Torkelson executed an employment contract with Wyatt

Truscheit, a white male, who would serve as IDEA's Chief Financial Officer.  By the terms of

this multi-year employment contract, Mr. Truscheit , was paid more than well over one hundred

thousand dollars and was allowed to reside in California while making bi-weekly visits to the

Rio Grande Valley.  Mr. Truscheit was also compensated by being provided with an apartment,

maid service, and groceries.  In 2016, Mr. Torkelson and Mr. Truscheit renewed this

employment contract and by 2018, he was paid several hundred thousand dollars a year.  Mr. Torkelson and Mr. Truscheit used their positions as CEO and CFO to cause the School to make purchases for charter flights, Tesla vehicles, an apartment in San Antonio, and box suites at major sporting events.  With School funds, IDEA, via Mr. Torkelson and Mr. Truscheit, purchased the Inn at Chachalaca Bend, a boutique hotel in Cameron County, Texas, and on information and belief, the wife of a Board member was the buyer's agent.  After questions arose regarding the legitimacy of this purchase, IDEA marketed the property for sale.  As a result of these questions, the Board's chair resigned.

9.       Despite the fact that the Board knew of Mr. Torkelson's improper use of School resources, on information and belief, Mr. Torkelson was encouraged by members of the Board to resign.  During the negotiation of Mr. Torkelson's exit from the School, a member of the Board was communicating the Board's deliberations to Mr. Torkelson to Mr. Torkelson's advantage. In the end, Mr. Torkelson was permitted to resign and was given a severance package amounting to over a million dollars.  Upon Mr. Torkelson's resignation, Gama was named as his interim replacement.

10.      On or about July 16, 2020, Gama, as interim-CEO, provided evidence to the Board's finance committee to support the termination of Mr. Truscheit's employment for cause, but was pushed by the Board and IDEA's counsel to allow Mr. Truscheit to resign.

11.      On or about August 6, 2020, Gama and the School executed a "Superintendent/CEO contract."  Section 5.3 of the Superintendent/CEO contract limits the ability of the Board and the School's to terminate Gama's employment.  Section 5.4 sets forth procedures the Board and the School must satisfy to terminate Ms. Gama's employment and specifically provides:

> "In the event the Board determines that this Contract should be terminated for good cause before its term expires, the Board shall provide written notice of its

finding of good cause, after which the Superintendent/CEO shall be afforded
reasonable notice and an opportunity to appear before the Board to present
evidence and argument in rebuttal."

Despite having the same amount of time with the School, Gama's compensation was several
hundred thousand dollars less than what Mr. Torkelson was paid for the same work and did not
include the same executive benefits component the Mr. Torkelson's contract provided.

12.     Gama then requested that the Board retain an independent auditor to review the use of
School resources.  The Board granted Gama's request for an independent audit and retained an
auditor.  Once the audit commenced, Gama thoroughly complied with all of the auditor's
requests.

13.     As CEO, Gama:

    a.   Overhauled all policies and procedures and trained staff how to implement them;

    b.   Revamped the Board's finance committee to ensure it was an actual working
         committee; and

    c.   Set up audit and governance committees lead and managed by the Board.

14.     On or about May 17, 2021, Gama received notice from the School's attorney, Joseph E.
(Joe) Hoffer, of an upcoming Board "retreat," scheduled to be held on May 24, 2021.  Gama was
explicitly notified that her attendance would not be welcomed.

15.     On May 24, 2021, the Board had the first day of their "retreat."  It was normal and
customary for Gama to be called into a meeting of the Board after its members came out of
executive session.  When the Board exited executive session, Gama was not called in to attend
the regular meeting nor was she even informed that the Board voted to terminate her
employment.

16.     On May 25, 2021, the Board convened the entire senior leadership team consisting of
school chiefs, regular and area superintendents, executive directors and some select vice

presidents.  In response, Gama reported to work and began greeting the members of the gathered

senior leadership team.   While doing so, the Board's chairman, Al Lopez, instructed Gama to

report to her office.  Once there, Ms. Gama was issued a "Notice of Termination" from "Al

Lopez, Board Chair and Acting Superintendent of the School, IDEA Public Schools."  Two (2)

other members of the Board were also present in this meeting.

17.     The Notice of Termination baldly alleges that Gama failed to "adhere to the standards of

conduct and professionalism expected of [her] in [her] position as an officer of IDEA, and for

violations of policies and applicable standards and procedures."  However, the Notice of

Termination failed to give Gama any reasonable notice, whatsoever, of what she is alleged to

have done or failed to do.

18.     Al Lopez then had Gama escorted out of the building.  The Board's decision to gather the

School's senior leadership team, allow Ms. Gama to make her presence known to them,

terminate her employment with no prior notice, and then see her escorted off the School's

premises caused Gama to be professionally and personally discredited in front of her peers.

19.     Later that same day, May 25, 2021, the Board released a public statement, claiming that it

had received "anonymous emails detailing allegations of inappropriate spending and misuse of

IDEA resources."  The School's press release mentions "anonymous emails" but purposely

failed to mention that they were received well over a year prior to Gama's termination.  The

School's Chief of Staff, Jessica Hess, told Gama that some members of the Board had an

evidenced-based belief that the anonymous emails came from Mr. Torkelson.

20.     Moreover, Gama's "spending and use of School resources," both before and during

Gama's tenure as CEO, were examined by the School's internal review processes and

subsequently approved by the Board's then-treasurer and the Board's finance committee chair,

Al Lopez.  At no time prior to, or during, her tenure as CEO did Gama receive any notice from the Board or its finance, audit, or governance committees that her expenditure of School resources were in question or problematic in any way.  Moreover, over the years, the School had to respond to several Texas Education Agency investigations and public information requests related to IDEA's expenses.  During those processes, not once was Gama notified that any of her expenses were an issue nor was she ever notified that corrective action was needed.

21.     On May 28, 2021, Ms. Gama tendered the School's Chief Human Assets Officer, Martin Winchester a written request, via email, to be heard by the Board, as guaranteed by Section 5.4 of her Superintendent/CEO contract.

22.     On June 3, 2021, Mr. Winchester sent a reply email informing her that for her to be heard, she had to file a "Termination Grievance by June 8, 2021, and attached a blank version of this form.

23.     On June 8, 2021, Gama filed her Termination Grievance.

24.     On June 16, 2021, Mr. Winchester held a "conference" on Gama's Termination Grievance.  The School and or/the Board appeared through its counsel, Emily Boney.  As stated above, the Notice of Termination only made conclusory allegations of misconduct and failed to provide Gama any reasonable notice of what she was alleged to have done or failed to do.  In the conference on her Termination Grievance,. Gama presented a written, thorough, basis for reversing the Board's decision to terminate her employment.  However, neither the School and/or the Board presented neither any evidence nor any argument in support of the Board's decision.

25.     On June 21, 2021, despite a complete lack of any evidence, or even argument, to support the Board's decision, Mr. Winchester decided to "uphold the decision to terminate Ms. Gama's

employment."  Other than making completely conclusory allegations, Mr. Winchester's written decision failed to give Gama any reasonable notice of what she is factually alleged to have done or failed to do.  Mr. Winchester's decision and finding were made without any evidence, whatsoever, presented during the hearing on her Termination Grievance.

26.     On June 29, 2021, Gama filed a grievance/appeal of Mr. Winchester's decision.  Therein, Gama disputed each and every conclusory allegation of misconduct described in Mr. Winchester's decision and asserted that the entire "conference" was nothing but a sham because nothing was presented by the Board or School to support its decision nor was she notified what she was alleged to have done or failed to do.

27.     On July 24, 2021, the Board heard Gama's grievance/appeal in executive session.  During this meeting, Ms. Gama demanded to know what she specifically was alleged to have done or failed to do.  Again, the Board refused to give Gama any reasonable notice of what she is alleged to have done or failed to do.  The Board was represented by counsel, Joseph E. Hoffer, but made no argument nor did it present any evidence to support Gama's termination.  After the Board exited executive session, it upheld Ms. Gama's termination.

28.     Gama asserts that she was paid significantly less than Mr. Torkelson, for the same work, because as a Hispanic female, she was expendable and could be used as a scapegoat for the Board's failure to oversee the use of School resources by its white male CEO and white male CFO.  Gama denies that IDEA had cause to terminate her employment but also asserts that because of her race and sex, she was not given the option to resign nor offered a severance, as her predecessor, Mr. Torkelson, was given.  IDEA's malintent to discriminate is also demonstrated by its decision to parade her in front of her peers immediately upon termination and then issue a press-release attributing to Gama what the Board knew to be the conduct of Mr.

Torkelson and Mr. Truscheit.  While the School allowed Mr. Torkelson to resign quietly with a severance to avoid media notoriety, the School took steps to publicly fire and humiliate Gama for things she did not do.  Any assertion by IDEA that it had cause to terminate her employment is merely a pretext for discrimination because such an allegation is completely without out merit and because at no time during any stage of her employment grievance process was Gama ever notified what she was alleged to have done or failed to do.

CAUSES OF ACTION

COUNT 1:        DISCRIMINATION UNDER TITLE VII

29.    Gama re-alleges and here incorporates the allegations contained in the section titled "Statement of Facts," above.

30.    Gama was an employee within the meaning of Title VII and belongs to protected classes based on race and sex.

31.    IDEA is an employer within the meaning of Title VII.

32.    Gama's employment was terminated.

33.    Gama was qualified for the position of CEO.

34.    Gama was within the protected classes of race and sex at the time of her termination.

35.    Gama was terminated because of her race and sex.

36.    Therefore, IDEA is liable to Gama for violations of Title VII.

COUNT 2:        VIOLATION OF EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
                AND 42 U.S.C. §1983

37.    Gama re-alleges and here incorporates the allegations contained in the section titled "Statement of Facts," above.

38.     The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States protects individuals from state governmental action that works to treat similarly situated individuals differently.

39.     42 U.S.C. §1983 provides a remedy against any "person" who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's rights under, inter alia, the United States Constitution.

40.     A municipal entity, such as a public school district, is considered a "person" under § 1983.[1]

41.     Texas Education Code §12.103 provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools and to municipal zoning ordinances governing public schools."

42.     IDEA is an open-enrollment charter school governed by the Texas Education Code.

43.     Gama belongs to protected classes based on race and sex.

44.     At the time of her termination, Gama held the same position at IDEA that Mr. Torkelson held.

45.     Gama was paid significantly less than Mr. Torkelson, a white male, for the same work.

46.     When IDEA learned that Mr. Torkelson was engaged in the misuse of school resources and related funds, along with other improprieties meriting "for cause" termination, IDEA gave Mr. Torkelson:

        a.   notice of the allegations against him;

        b.   an opportunity to respond;

        c.   an opportunity to negotiate a severance agreement that, when executed, resulted in compensation amounting to over a million dollars and a binding commitment to

---

[1] *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)

on the part of IDEA to protect the professional name and reputation of Mr. Torkelson.

47.    Despite having an explicit provision in her Superintendent/CEO contract regarding procedural requirements for termination for cause, Gama:

      a.    was never provided with notice of the allegations her either before being issued the notice of termination or during her internal appeal process;

      b.    was never provided an opportunity to respond prior to being issued the notice of termination, much less was she given an opportunity to negotiate a severance; and

      c.    had her professional name and reputation destroyed both before her peers at IDEA and in the media the day she received her notice of termination and before she was able to complete IDEA internal appeal process.

48.    IDEA treated Gama differently than Mr. Torkelson because of her race and sex.

49.    Therefore, IDEA is liable to Gama for violations of the Fourteenth Amendment and 42 U.S.C. §1983.

COUNT 3:     VIOLATION OF PROCEDURAL DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. §1983

50.    Gama re-alleges and here incorporates the allegations contained in the section titled "Statement of Facts," above.

51.    The Due Process clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property without due process of law."

52.    42 U.S.C. §1983 provides a remedy against any "person" who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's rights under, inter alia, the United States Constitution.

53.    A municipal entity, such as a public school district, is considered a "person" under § 1983.[2]

---

[2] Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000)

54.    Texas Education Code §12.103 provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools and to municipal zoning ordinances governing public schools."

55.    IDEA is an open-enrollment charter school governed by the Texas Education Code.

56.    Gama had a property interest in continued employment created by her Superintendent/CEO contract with IDEA.

57.    Section 5.3 of Gama's Superintendent/CEO contract limits the ability of the Board and the School's to terminate Gama's employment.  Section 5.4 sets forth procedures the Board and the School must satisfy to terminate Ms. Gama's employment and specifically provides:

> "In the event the Board determines that this Contract should be terminated for good cause before its term expires, the Board shall provide written notice of its finding of good cause, after which the Superintendent/CEO shall be afforded reasonable notice and an opportunity to appear before the Board to present evidence and argument in rebuttal."

58.    Gama:

   a.    was never provided with notice of the allegations her either before being issued the notice of termination or during her internal appeal process; and

   b.    was never provided an opportunity to respond prior to being issued the notice of termination.

59.    Therefore, IDEA is liable to Gama for violations of the Fourteenth Amendment and 42 U.S.C. §1983.

COUNT 4:    VIOLATION OF SUBSTANTIVE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. §1983

60.    Gama re-alleges and here incorporates the allegations contained in the section titled "Statement of Facts," above.

61.    The Due Process clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property without due process of law."

62.     42 U.S.C. §1983 provides a remedy against any "person" who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's rights under, inter alia, the United States Constitution.

63.     A municipal entity, such as a public school district, is considered a "person" under § 1983.[3]

64.     Texas Education Code §12.103 provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools and to municipal zoning ordinances governing public schools."

65.     IDEA is an open-enrollment charter school governed by the Texas Education Code.

66.     At the time of her termination, Gama held the same position at IDEA that Mr. Torkelson held.

67.     Gama had a property interest in continued employment created by her Superintendent/CEO contract with IDEA.

68.     When IDEA learned that Mr. Torkelson was engaged in the misuse of school resources and related funds, along with other improprieties meriting "for cause" termination, IDEA gave Mr. Torkelson:

     a.  notice of the allegations against him;

     b.  an opportunity to respond;

     c.  an opportunity to negotiate a severance agreement that, when executed, resulted in compensation amounting to over a million dollars and a binding commitment to on the part of IDEA to protect the professional name and reputation of Mr. Torkelson.

69.     Despite having an explicit provision in her Superintendent/CEO contract regarding procedural requirements for termination for cause, Gama:

---

[3] *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)

a. was never provided with notice of the allegations her either before being issued the notice of termination or during her internal appeal process;

b. was never provided an opportunity to respond prior to being issued the notice of termination, much less was she given an opportunity to negotiate a severance; and

c. had her professional name and reputation destroyed both before her peers at IDEA and in the media the day she received her notice of termination and before she was able to complete IDEA internal appeal process.

70.     IDEA's action taken in terminating Gama's employment, and its actions after regarding her professional name and reputation, constitute arbitrary, wrongful actions under color of law regardless of the fairness of the procedures used to implement them.

71.     Therefore, IDEA is liable to Gama for violations of the Fourteenth Amendment and 42 U.S.C. §1983.

COUNT 4:        BREACH OF CONTRACT

72.     Gama re-alleges and here incorporates the allegations contained in the section titled "Statement of Facts," above.

73.     Pursuant to 28 U.S.C. §1367, Gama asserts that the Court should exercise its supplemental jurisdiction over her breach of contract claim.

74.     Gama had a valid contract with IDEA, Gama's Superintendent/CEO contract.

75.     Gama performed under the Superintendent/CEO contract.

76.     Section 5.3 of Gama's Superintendent/CEO contract limits the ability of the Board and the School's to terminate Gama's employment.  Section 5.4 sets forth procedures the Board and the School must satisfy to terminate Ms. Gama's employment and specifically provides:

> "In the event the Board determines that this Contract should be terminated for good cause before its term expires, the Board shall provide written notice of its finding of good cause, after which the Superintendent/CEO shall be afforded reasonable notice and an opportunity to appear before the Board to present evidence and argument in rebuttal."

77.     IDEA breached Gama's Superintendent/CEO contract because it did not have cause to terminate Gama's employment and it failed to adhere to the contract based procedure for for-cause termination.

78.     Gama sustained damages as a result of IDEA's breach of her Superintendent/CEO contract.

79.     Therefore, IDEA is liable to Gama for breach of contract.

COMPENSATORY DAMAGES

80.     As a direct and proximate result of IDEA's conduct, Gama suffered the following injuries and damages:

     a.   Compensatory damages;

     b.   Consequential damages;

     c.   The wages, salary, profits, and earning capacity that plaintiff lost and the present value of the wages, salary, profits, and earning capacity that Gama is reasonably certain to lose in the future because of IDEA's actions;

     d.   The mental/emotional pain and suffering that Gama has experienced and is reasonably certain to experience in the future; and

     e.   Nominal damages.

PUNITIVE DAMAGES

81.     The acts of IDEA, as described herein, were motivated by an evil motive and intent, and involved a reckless and callous indifference to her federally protected rights.  Therefore, Gama seeks punitive damages.

ATTORNEY FEES

82.     Pursuant to 42 U.S.C. §2000e-5(k), 42 U.S.C. ¶1983, and Tex. Civ. Prac. & Rem. C. Ch. 38, Gama is entitled to an award to attorney's fees and costs

<u>P<small>RAYER</small></u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff, JOANN GAMA, prays that

Defendant, IDEA PUBLIC SCHOOLS be cited to appear, and after trial on the merits judgment

be rendered against Defendant IDEA PUBLIC SCHOOLS and award JOANN GAMA:

- compensatory damages;

- consequential damages;

- punitive damages;

- all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation; and

- any and all other general relief or specific relief to which she proves herself entitled.

Respectfully submitted,

By: /s/ David Willis
David Willis
State Bar No. 24039455
Federal ID. 36365
Email: dwillis@davidwillispc.com
1534 E. 6th Street, Suite 201
Brownsville, Texas 78520
Ph:     956-986-2525
Fax:    956-986-2528

OF COUNSEL
David Willis, P.C.

ATTORNEY IN CHARGE FOR
Plaintiff, JOANN GAMA.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to each attorney-in-charge, via the Electronic Case Filing System ("ECF"), in accordance with the Federal Rules of Civil Procedure, on September 8, 2023.

Joseph E. Hoffer
Jasmine Grant
SCHULMAN, LOPEZ, HOFFER, & ADLESTEIN, LLP
845 Proton Rd.
San Antonio, TX 78528
(210)538-5385
(210)538-5384 – Fax
Email: jhoffer@slh-law.com
Attorney for Defendant, IDEA Public Schools

_/s/ David Willis
Attorney for Plaintiff,
JOANN GAMA